Our next case is number 25-1699, O'Connor v. Fairfax Taxi. Mr. Garvey, no rush, but Garver, excuse me, whenever you're ready. Thank you, Mark. Good morning, may it please the court. I'm Stephen Garver, and I'm here with Ms. Mayer who are appearing on behalf of the plaintiffs in these two consolidated cases. These cases, this arises out of, these consolidated cases arise out of a horrific automobile collision, which occurred on the George Washington Parkway on April 29th, 2019. Dr. Jung, who is one of our clients, the plaintiff in the case, and Ms. Kim, her estate is also a client. She was killed in the collision. There were passengers in the back of a cab driven by Mr. Gamaya, who is a defendant, actually his estate is a defendant in this case. Mr. Gamaya was driving a taxi for Fairfax Taxi, red top cab. Jung and Kim had called, they were at Mount Vernon, had taken an afternoon off to go visit Mount Vernon. And call red top for a cab to come, Mr. Gamaya responded through the system that they had and picked them up. And he was headed north on the GW Parkway. The parkway at this location, which was I think in the vicinity of Morningside Drive, was four lanes at that time, it's since been changed. But then it was four lanes, two lanes northbound, two lanes southbound. Council, can I get, I appreciate you giving us that background. I'm going to just, because we got limited time, try to ask some questions. I hope that's, I'm not trying to be. That's fine. But there's some things we need to ask about. This is an issue that may be something that's not in the briefing. But I just, and so if this catches you off guard, that's totally fine. But in the O'Connor case, how do we determine this point of citizenship for purposes of diversity? Do we look at the, who do we look at and what's the basis for that? Do you have a response to that? Like I said, that probably is going to come out of the blue. I'm glad for you to say I'll deal with it later. But we need to make sure we have jurisdiction and there may be a good answer to that. But when I looked at it, it wasn't like just perfectly obvious. I can deal with that later, Your Honor. I'm pretty certain in the record, there is some reflection that they were both Korean nationals. No, my question, I don't think that's, I agree with that. My question is, do you look at the decedent's citizenship? Do you look at the beneficiary's citizenship? Or do you look at the representative's citizenship? I believe it's the decedent's citizenship. And Your Honor, I can't tell you off the top of my head the authority for that bill, happy to get it. And I know I researched that issue before we filed. Just one last comment to kind of set the table. If I may, one other additional thing, Your Honor. This was on the GW Parkway, which is federal property. So even if there was not diversity, there would have been jurisdiction because it was on federal property. We didn't raise that. I'm not sure about that. Okay, well we didn't raise that issue. If you think that's true, I think what we'll probably do, I think it raises, it seems to me to be a hard question under 1332C2, which refers to a decedent's state. But that's referring to like within the United States, it doesn't include a foreign state. It's not an obvious answer, at least from my perspective on this question. But maybe we'll ask you all to provide us a little bit of briefing. We're not trying to put you on the spot with it, but- Yes, Your Honor, and as I say, we really- I think in the briefing, it might be helpful to know O'Connor's citizenship in case it's relevant. Mr. O'Connor is an attorney I can represent to the court who's been in practice. He's retired now, but he's been in practice in Virginia for over 40 years. That means if it's his citizenship that matters, we don't have diversity. We'd have to look at the decedents. So it's the beneficiaries or the decedents. That's correct, Your Honor. Okay, gotcha. And if you'd like, we'll be happy to submit some authority on that. Great, thank you. If I may return to argument, the first question I wanted to address is a summary judgment argument, because obviously that's of primary significance. If we, just so I understand the framework, if we agree, if we affirmed on summary judgment, the rest of these issues are no longer relevant? That's correct, Your Honor.  Which is why it's a good place to start. We're happy to hear it. Yes, sir. So the question is reasonable inferences from common experience, circumstantial evidence. The trial judge said, well, there's no eyewitness that remembers anything as to the seconds of the collision itself. Well, that frequently happens in cases that nobody's eyewitness to a particular moment, but there is other circumstantial evidence. So, counsel, I think that's fair. If I look at the district court, you know, there's no witnesses in there. There are witnesses who talk about erratic driving. There are witnesses who talk about the other driver, the Volkswagen coming across the lane. There's some parts in there, you know, that I think you've got some arguments about, but it seems like this kind of boils down to whether there's a genuine issue of material fact about whether there was any negligence at all by the driver when someone coming at high speed crossed the center line. And because I think that's the question. I don't think leading up to that there's really a genuine dispute of material fact. What's your best argument as to that question? If I understand your honor correctly, the question comes back that I believe the evidence is inconsistent with which driver, whether it was the cab or the VW crossed the double yellow line. There are witnesses that say, well, they were both pretty close. Yes, there was a witness who said. Give me the best evidence that suggests that the cab crossed the center line. I mean, I know there's some evidence that suggests that the other car crossed the center line. What is the best evidence that the district court had at summary judgment that would allow us to infer that the cab crossed the center line? There is no evidence specifically to show the cab crossed the center line except that there's no markings on the northbound lane. There's no tire marks on the road. There's no indication that the cab driver did anything to avoid the collision. Right, but that assumes away the problem, right? So if we don't have evidence that he's the one that crossed, what is the evidence that the other car crossed the center line more than a split second before the collision occurred? Well, it's just one witness who said they believed they'd seen him go across. You have a negligence claim. Yes. And don't you have to put forth evidence that the driver of the cab was negligent? And one way to do that would be to say he crossed the center line. That's one way. Okay. Let's assume just for discussion you don't have evidence that creates a genuine dispute of material fact. Then your theory is that a driver who hasn't crossed the line is negligent by not avoiding a driver coming at over 50 miles an hour and crossed the center line and crashing into him. Now, you can pursue it. It seems like a tough argument, but it seems to me you've got to do something that shows what angle he came from, how long he had been. It was apparent to the driver that the Volkswagen was across the lane. There's got to be some reconstruction. And even, I know there's the issue about the expert. I mean, that expert didn't reconstruct anything. He just kind of described evidence like you probably would have done, like to have done at closing argument had you gotten there. So, we got no expert who says anything. And respectfully, that's the way I read it. And so, it seems like you got a horrible accident. And it's indeed tragic. And these sort of cases are very difficult. But it seems like you got a tragic accident, evidence that at some point he was looking at his phone. And then we're supposed to, from that, decide, well, that's enough to say someone was negligent. That just seems like a big leap. Well, there's failure to pay full time and attention. Even if he didn't cross the double yellow line, if he failed to pay full time and attention, which resulted in either a worse accident or worse collision, or resulted in the collision to begin with, that he could have avoided it. The testimony- Didn't it resulted in doing a lot of work in that instance, though? I'm sorry, I didn't understand. Resulted in, right? You said full time and attention that resulted in a worse accident, right? So, you gotta show that there's a connection between the two, right? If I ride down the road, as almost everybody I know, and occasionally look at my phone for directions or otherwise, and then I later get into a wreck, you have to show connection between my using the phone for directions and the wreck. You don't get to just say, we've looked at the phone, right? And so we know that there were these, Google Maps was running at the time for the ten minutes before the crash. And so therefore, because he was using the phone, it must have somehow resulted in a worse crash. But we have at least three or four places in the record where it talks about that he was on the phone, he was using the phone, he was talking. It's not clear whether he was talking on the phone or just talking. And that he was paying attention to the phone. But why does that matter? What I don't understand is how that connects to the question. How does that show resulted in? If I grant you, and maybe it's a dispute or maybe it's not. But if I granted you that he was using the phone while driving the cab, I'm not sure that itself is negligence. But maybe it's not full time and attention, if I even granted you that. How do you then connect that? How do you do the resulted in piece? So, I think your Honor's right that if you look at one inference or one issue, that alone is not enough. But there's a series of inferences here. There is no skid marks on the road. There's the McDonald's- Wait, so let's talk about that one for a second. So why? If we don't have any sense of when the Volkswagen crossed the road, why is that relevant at all? I mean, the Volkswagen could have crossed the road, as far as I know, immediately before contact, right? Literally was a swerve across and immediate contact. The very first thing that happened when it crossed the yellow line was connecting with the cab. Or it could have crossed the yellow line, you know, 100 feet back or a mile back, whatever it is. But there's no evidence that shows me one way or the other. If it was 100 feet back, one would assume that the driver, if he was paying attention to the cab driver who's paying attention, would have either moved to the right to avoid it, would have hit the brakes. But you preface that statement by saying, if it had been 100 feet back, presumably something would have happened. The problem is you have no evidence that it was 100 feet back. But you have no, there's nothing for us to look at that suggests that he was across the yellow line for more than a moment. It could have been for two hours. He could have driven the whole way there across the center line, or it could have been a fraction of a second. And so, if we don't have any way to conclude that, the fact that there are skid marks don't do us anything, do they? Well, there's no, if you take that, the inferences from that, you take the fact that the right lane is apparently clear. But you don't have evidence of that either. You have evidence that traffic was light. And without going back even before that, would you agree with this, if they're going down each in their own lane, but right before the collision, there's a sudden jerk to the left by the Volkswagen, and there's no time whatsoever to avoid it. That wouldn't be negligent. You agree with, I mean, you're not saying, are you, that the driver, no matter what, has an obligation to avoid this collision, are you? Yeah, I mean, if it was a sudden, last-minute move across the lane, you wouldn't be saying that's negligent. Well, there is Virginia law that says you have a duty to avoid collisions. But I would concede that if you have no way to avoid it, well, then, obviously, that's negligence. But that is speculative in itself. But why is it speculative? Maybe, but isn't it also speculative to say it didn't happen? Isn't that the problem, is that we don't know what happened? So speculating that there was time, you know, or saying there was time would be speculation, and saying there was no time would be speculation. Isn't it, then, a question for a jury to determine? That's a fair question. I think that's a good question. I want to press your colleague on that. But I think one of the response will be, you have a burden to create a factual dispute. And do you not have some burden to show that this driver had enough time, other than the fact that there was a crash? And, you know, the expert that was struck, even if he was not struck, didn't do that. He didn't do a reconstruction. I mean, I know something about reconstructions. I mean, there's no look at, you know, electronic, you know, data boxes. There's no photogrammetry. There's none of that stuff that lets you actually reconstruct the accident. It's just, we got a bad rat. Well, I understand Your Honor's point. But I'm not sure what the question is that you're asking. Well, that's a good response. That's a fair response. But my question is, you said it's a question for the jury. And I appreciate that. But don't you have to produce evidence that it's more likely than not? You know, that if construed in your favor is more likely than not, that, you know, that there was time. Not just say, hey, we got this situation. It could have been enough time. Or it could have not been. And you need to construe that in my favor. Don't you have to produce something that points more in your direction than the alternative? Well, I think what you have, again, is a jury question in taking a look at. And I know we talk about, we didn't get to that other argument. Because obviously, we focused on the summary judgment. But speculative versus plausible. And in some ways, I like the idea of the dictionary definition, which talks about theoretical versus demonstrative, for purposes, perhaps, of the summary judgment. But regardless of what test you use, it would appear that there's a reasonable juror could look at the evidence and say, well, we have no skid marks. We have no indication that there was an attempt by the cab in any way to avoid the collision. We have clear evidence that they hit straight head on, left side of, and when I say head on, just the left side of each vehicle. So basically, from the driver, and the driver of each vehicle hit head on. The other side of the vehicles were not hit. If you put all that together. Is that, I just want to make sure, is there anything else? So if I was making the list of inferences that you want us to consider, I take it you're saying that he was using a phone, no skid marks, right lane open. We can debate whether that actually was there or not. And they hit on the left side. Is that the facts from which you think a jury could find negligence? Or is there something else you would want us to point to? I believe that those are the principal facts, Your Honor. Okay, thank you, counsel. We'll hear from you on rebuttal in just a moment. Thank you, Your Honor. Mr. McGavin, we're happy to hear from you. Good morning. May it please the court, I'm John McGavin. I'm here on behalf of Fairfax Taxi and the estate of Mr. Gamoa. We ask the court to affirm. We agree that the sole issue, or the easiest way to address this, is to take on the issue of whether plaintiff has any evidence to create an issue of fact regarding how the accident occurred. And Judge Hilton went through the evidence that was presented by the plaintiff. And the witnesses that were identified and addressed each in his opinion. Those were a police officer, Officer McDonald, who was offered to testify that he did not hear skidding noises. That Mr. Oswalt did not see the crash. And he said that he did not see which vehicle crossed. Bracken didn't see the crash, but saw a laptop in the gentleman's lap, or a phone in his lap afterwards. And then plaintiff had an expert that they wanted to present. And if that expert were permitted to testify, he had very limited evidence to present. And Judge Hilton, when he excluded the expert, determined that the expert's opinion was of no consequence, because he- Can I ask you this question, which we spent a little bit of time with your colleague on? Imagine hypothetically that if the Volkswagen crossed the center line more than 100 feet before the accident, that there would be negligence. I know you probably don't agree with that, and we can have that debate, but just assume for a minute that that was true. And yet, if this Volkswagen crossed the center line in the moment before the collision, there would be no negligence, because he would have no ability to deviate. Those are, seems like to me, maybe equally plausible things that have happened. We just don't have evidence one way or the other on that question. Your colleague responds by saying, that's what a jury should decide. They should decide whether the Volkswagen crossed the center line with sufficient time to permit a response or not. Do you think that's right? Should a jury have to decide that question? Well, your honor, in Virginia State Court, we're not allowed to use depositions for summary judgment. You're not in Virginia State Court. I know that, and so I think Mr. Garver's response reflects perhaps a leaning towards state court. And that's why the benefit of summary judgment on this record is so significant. There is no witness who places where the Jewett vehicle was prior to the crash. Nobody saw it. None of these witnesses identified where he was and when he came over. But why shouldn't a jury then just decide, right? It's got all the facts that it's got. We know what those facts are. It's a universe, right? And so there's a dispute, effectively, about when the Volkswagen crossed the center line. And we sometimes leave those disputes to juries. Why not here? There's no facts to support it. They would have to speculate. And the jury, under the jury instructions, is told, do not base your verdict on sympathy, bias, or speculation. They'd have to speculate. Would it be speculation? He says that, I mean, he says the absence of skid marks pre-crash suggests that the taxi driver wasn't paying attention. I mean, I get the point that I think your response would be that it's equally, you know, consistent with a sudden movement across the lines. They didn't have a chance to respond to. But if you have two things like that, there's evidence, right? I mean, there is, I mean, the lack of skid marks, is that something that is in the evidence that, you know, if we construe in favor of the non-moving party, would be something that the jury gets to decide? I don't think so. First of all, there's no evidence in this record whether there were anti-lock brakes and whether he applied his brakes. There's no black box evidence, as you mentioned, in this case. So the absence of skid marks, when you consider the closing speed between these two vehicles, assuming 45 miles per hour each and how much distance and the reaction time that would be needed, even for Judge Richardson's example of 100 feet, I'm not sure you get your foot off the brake with those. Why isn't that a great closing argument? It's a great closing argument, but we're here on whether or not there's any evidence to support the idea to send it to the jury. And I can make the closing argument, and maybe I would have in state court if they'd stayed. But they non-suited, took a non-suit and elected to go to federal court, and we have the benefit of the court testing the evidence, and they gave it their best shot, but the evidence doesn't get there. The jury would have to speculate, and that is a great closing argument, but it's also appropriate for summary judgment. The evidence just isn't there, and their expert doesn't help them. His theory that the collision might not have been so bad is absolute rank speculation. And the idea, there is no evidence if there was any vehicle in the right lane or not. That's completely silent on this record. It's not there. And so whether there was a vehicle there or not, we don't know. That's the problem. And the GW Parkway, the evidence should be clear from the police report, and even I know a couple of the judges on this court worked in D.C. for a period of time. If you've driven that road, the evidence and the police reports show it's a narrow road. It's two yellow stripes down the middle, 45 miles an hour, no shoulders. There's not much time, and under this set of facts, you would hope that there would be a witness for Mr. Gamoa to say that Jewett crossed at the last second, but that it's not there for me, and likewise it's not there for the plaintiff. So it would be pure speculation to send this to the jury, and that's why the benefit of having the court examine the record, even consider the expert before striking him, there's just no evidence. So as I understand what happened with the expert, is he struck him based on the timeliness of disclosure, and then in summary judgment considered the evidence. Didn't say it's excludable under 702, but considered it and said it didn't add to the cases. Not exactly, Your Honor. So what happened is at the time of arguing the motion to strike it, or the motion for extension of time, we asked the court in response, consider it, because even if on appeal there might be a challenge and say you should have let it in, it's insufficient. And it was then in that order that Judge Hilton said, I've examined it, I've considered it, so when it was time to rule on the motion to extend, he said, even if I extended it and let it in, it's not sufficient. So that's when he made that determination. He didn't consider it at the summary judgment because he had already evaluated it. Unless there are any other questions, we asked the court to affirm, and I thank you for the opportunity to appear before the court. Thank you, Counsel. Thank you. Mr. Garber, we're happy to hear from you. Thank you. So there seems to be some questions, Your Honor. The question about the right lane being clear, there's also the testimony from Dr. Young that he had been looking out the car window, looking at the trees and the river, which he wouldn't have- Didn't he also say that the last thing he remembered was being in the right-hand lane? I'm sorry? Didn't he also say the last thing he remembered was the car, the cab was in the right-hand lane? I believe he was confused and indicated he was in the right-hand lane. I think it's important, Your Honor, to recognize that English is a second language to him, and if you look at the record, it's clear he was having difficulty understanding some of the questions in that position. So, if they were in the right-hand lane, this collision never would have occurred. Yeah, or also, maybe he doesn't remember anything after being in the right-hand lane, seeing the trees to his right. But at some point, the cab moved into the left-hand lane, but that part of his memory is lost because of the collision. Which he seemed to indicate he did lose some memories. Well, again, Your Honor, I think that would be speculative in and of itself. All we have is- Again, we're back to the problem of a lack of evidence. And so what we have is we have what he says, and he talks about the phone. That appears, he tells the investigator that the night of the accident, which is in the record, I think in two places in the record, because I think the investigator typed up, and then he had his handwritten notes. But all of that was together, and it's important to note that Bracken, who was the first person on the scene, was an experienced person who had dealt with trauma before and had training in first aid and trauma in the military. And he said he saw the phone in Gamaya's lap. And of course, the trial judge said, well, maybe he was trying to make a phone call. Well, that's just not realistic. I mean, Bracken testified that as he got there, the cab driver, Gamaya, had bitten off his tongue. He was spitting out blood and foam out of his mouth. And Bracken said that he was essentially watching him die. And I think he was declared dead later at the scene. So it's not realistic that he was grabbing the phone. The realistic thing is that the phone was there and he was using the phone as Dr. Young had testified. And the realistic inference, if you will, is that if he was doing that, and there was no suggestion that he tried to do anything to evade a collision, is that he was failing to pay full time attention. He didn't even see what was going on and going to happen. I understand there's an argument or inferences that can be made the other way, but that's what juries are about, which are the inferences that they're going to say are sufficient to rely upon. And John McDonald was a DC police officer, a retired DC police officer, had been a captain, but he was also trained in accident reconstruction. And he was a couple of cars behind the Volkswagen Jewett. And he said he heard the explosion when they hit, and he knew exactly what had happened, and he saw the smoke come up. And there were the cloud of dust, and he knew right away, and he didn't hear any skidding noises, and he said he clearly would have recognized them if anybody had attempted to do that. When he ran up to the car, it was so soon after the collision, one of the two vehicles was still spinning, he testified. And the, again, I'd come back to there's no evidence to suggest that Gamaya attempted to avoid the collision regardless of who crossed the yellow line and when the crossing is. And Your Honor's question before about is it 100 yards or 100 feet or is it just there, that too is some speculation as to where it happened. But it is a reasonable experience that we all have, that we drive particularly, we had rush hour traffic heading south, which is where the Volkswagen was coming. And they said it was, witnesses say it was heavy traffic. Also, there's some discussion about speed, and I just want to get to this because I've got a few seconds. But the judge raised the issue of speed suespante in his opinion. It's important to note, he never gave us oral argument on either of those things, but then he raised that, and we didn't have a chance to respond to it. And there was a- I understand that, counsel. Thank you very much for your arguments. We'll come down and greet counsel and adjourn court for the day.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Allison J. Rushing